Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. All right. Good afternoon, everyone. Welcome to our December arguments via Zoom. I appreciate the lawyers' willingness to participate remotely and deal with all the technological challenges. We'll call the first case D.H.H. v. Kirbyville Independent School District. And we'll first hear from Ms. Kerr. Whenever you're ready, you can begin. Thank you, Your Honor. My name is Ms. Kerr. I'm with Connell Michael Kerr, and I represent D.H.H., who is the appellant student in this matter. We're here today to discuss Section 504 and, in regard to that, the remedies that this student is entitled to. As the court knows, there are two laws that protect students who have disabilities. Section 504 is the broad and more encompassing law. The situation in this case is that when a student's parent asked for an evaluation in September of her eighth-grade year, she asked for an evaluation for special education and also under Section 504. That evaluation was completed by the school district pursuant to the IDEA, but she was never given any information about Section 504. She was not recognized as a qualified individual under Section 504 until approximately July of 2018. The issues here are whether the district court erred, first of all, in sua sponte eliminating D.H.H.'s agreed-upon 504 eligibility. By the time the district court ruled, the parties had met. They had had meetings, I think, three times, which are reflected in the record of excerpts at tab 10. They had agreed the student had emotional problems and anxiety, and they had made plans for her for the school year. My understanding is that she's now getting some 504 accommodations. What is it you want from this lawsuit that she doesn't already have? I think she's a high school senior now. You can correct me if I'm wrong, but so we're talking about just a few months, a semester left. What is it she doesn't already have that you're trying to get in this lawsuit? Well, first of all, it is not entirely, you're correct, your honor, she is a senior this year. What we do not have is a clear ruling from the district court because of the way the decision was written that the magistrate actually said she was not eligible under 504. So she, according to this decision, is not 504 eligible, which will, of course, impact her going forward in terms of college and situations there. But the school says she is. Now, I guess, I mean, something happens after the hearing officer decides this case. My understanding is that's when the school agrees she has 504. I mean, things happen all the time after one case is litigated and there's other developments. I mean, that requires us to change this ruling. I guess I guess I'm not quite clear on why it hurts or just the language in the opinion if she's now actually recognized as deserving of accommodations. Well, as far as I'm aware, the accommodations are being provided based upon the determinations in 2018, which, according to this ruling, were overridden by the magistrate. But that isn't our that that is our that is a big concern because eliminating her 504 eligibility does impact her going forward into college. When a student applies to college, they need to indicate, are they a 504 student? She could say she was and the college could say, no, you're not. We've got this opinion that says you're not. So it is important, Your Honor. And it may have just been a misunderstanding. The school's recognized her so she wouldn't be lying anyway. I mean, yeah, OK, well, what relief other than changing that statement? What what remedy is she seeking in this last with one semester left in school that that she's now not receiving given the school's recognition of of her 504 eligibility? So what we're what we're seeking is essentially services that would be for reading, for math and for counts and counseling. So those are the services she did not receive from this period of time of. September of 2016 through July of 2018. So our our position is that she still needs what would ordinarily be viewed under the special ed law, but we're not under the special ed law as compensatory education services. We are not seeking monetary damages. We're not seeking compensatory damages as that term is used in in 504 traditional law. We are seeking compensatory education services for whatever she may need for the same period of time that she lost those services, which was roughly 20 months. Now, at this juncture, of course, what that looks like may vary. We would you know, claim and to throw out that claim when there is clearly by the district's own policy of failure to give her 504 services for roughly 24 month 20 months. That is not correct. That is a violation of the ADA. So usually school districts don't run into this, your honor, because usually they give an IEP and then that's their defense to why they don't have to provide 504. But they didn't do that here. So she was left without. Does that make sense? Well, you can go to the other argument. I guess what you're saying is she would want classes, the payment for classes she could take now to improve her reading and writing and whatever else. Correct. Tutoring and counseling. And then there's a small amount of counseling reimbursement, about sixteen hundred dollars or something. But it would essentially be services similar to what we would see in a traditional IDEA compensatory education claim. The second issue, and I do want to make a point to recognize that the school district's own policy was violated in regard to not identifying her timely under 504. They're supposed to, under their own policy, which is in the record on appeal at 1529, 1530. If a student doesn't qualify for special education, the school district's policy says they're supposed to 20 days, tell certain campus people to do certain things so that the 504 option can be presented and the student can go down that path. That didn't happen here. Now, the other thing I wanted to address, Your Honor, was the issue of intent. It's our position that the 504 and ADA does not require proof of intentional discrimination in a school setting where the relief sought is compensatory education and not compensatory damages, not punitive damages, not even nominal damages. We cited to the Weber article, which is an excellent explanation of that. Essentially, when a student is in a school setting, there's nothing in the statute that requires intent. The statute, the ADA doesn't say that, 504 doesn't say that, and we have to follow the law. I mean, Bostock, the Supreme Court case that recently came out says we have to follow the law, and there's nothing in the statutes that say the student has to prove intent just because you're in a school setting, and nothing in the regulations say that that are provided by the Department of Education or the Office of Civil Rights. What about our cases like DA? Yeah. Do students seem to indicate a need for intentional discrimination even beyond for just a regular damages claim? Well, yeah. You know, DA is a confusing case because the student did not remain in the same school district. It's not entirely clear at what point there was or wasn't a hearing in that case or what he sought, but according to the reported opinion, the actual damages he sought under ADA 504 were compensatory damages. We're not seeking that. We're trying to draw a distinction, Your Honor, between the IDEA, where you can get your compensatory and tuition, the ADA, where you can get in certain egregious situations some sort of, you know, compensatory damages, and this narrow area of students who are 504 eligible but are not seeking, you know, large monetary damages. That's what we're looking at, and I think DA doesn't cut either way for us on that. I think the McMillan case that came out in 2019 sort of recognized that there could be an intentional requirement if it's compensatory damages, but there's not a Supreme Court case that says we have to seek compensatory damages, and we're not. So, the other... And is your 504 claim seeking the same relief as your IDEA claim? It is, but we were denied all the relief as the IDEA claim, so we came away from the IDEA claim empty-handed, which the Fry decision speaks to and says, you know, you can bring the claim on the same facts, and in fact, the Fry case even references a student with learning disabilities who needs tutoring in math and says, well, if you're going to ask for that under 504, you've got to go to an IDEA hearing first, which we did, and we were unsuccessful. In fact, we went twice. So, while it's the same type of relief, it certainly is allowable under 504. That is why... Are you seeking reimbursement for the services that you pay for? The parent had... The parent's purchase of services was very modest, Your Honor. It was about $1,600. The amount of tutoring for reading and math that we would be seeking would be the actual payment for additional tutoring classes, which would have to be determined in terms of the amount by the district court. Sometimes they simply award...  Well, under Section 504, there is a provision that says you actually can seek monetary damages, you know, in the hundreds of thousands. What we're seeking is simply payment for services not provided, and that's different. So, there's a couple of old district court cases in Texas, the Howard case and the David versus Spring Branch case, where they looked at that. It was kind of before IDEA took off in Texas, and they awarded costs of services. Here, the parent doesn't have a lot of costs of services because the child just didn't have them, but what we'd be seeking would be compensatory. Those can be provided by the school district rather than an outside source, and there's been no determination on that because we'd have to go back to the district court and make the specific request for the amounts and so forth, which is what we think should have been allowed. Finally, I just wanted to mention, I don't really think that we have an issue with respect to issue preclusion. The usual rule is whether the facts or the standards are different, and here we do have similar facts, but we also have somewhat different facts, and those different facts are once the child was deemed not eligible under special education, then there was another track for the district to follow, which they did not follow. Once they realized she was a qualified individual with a disability, it was too far removed from when they should have. They had that information in October of 2016 and didn't act on it until July of 2018. That's basically the situation here. Unless the court has questions, that is all I have. All right. Thank you, Ms. Kerr. You have time for rebuttal as well, and we'll next hear from Ms. Rogers. May it please the court, Kim Davis Rogers on behalf of Disability Rights Texas and Council of Parent Attorney Advocates. Our concern is the holding below that DHH's Section 504 claim fails because her IDEA eligibility claim failed. This holding conflates eligibility under the two and threatens the availability of Section 504 to students with disabilities. Section 504 is an anti-discrimination statute, and under it, those with disabilities may not be excluded from participation in or denied the benefits of programs that receive federal funding. In schools, this means that students with disabilities are ensured access to their education, and schools have an obligation to provide these students with a free, appropriate public education. Under the implementing regulations, the individual educational needs of a student with a disability must be met as adequately as the needs of a non-disabled student is met. A key difference between the IDEA and Section 504 is eligibility. Under Section 504, a student must have a physical or mental impairment that substantially limits one or more major life activity. The IDEA requires that a student have one of the enumerated disabilities, and because of that disability requires special education. The different standards means that there are many students who are eligible for Section 504 who are not eligible under the IDEA. The U.S. Department of Education estimates that over plans are created for students so that they can access their education. These plans can include accommodations, such as sitting near the teacher, or shortened assignments. There can be modifications to the method of instruction, as well as related services, such as counseling or the use of a behavior intervention plan. What's the point of the exhaustion requirement that FRI imposes if the 504 claim is really based on the same denial of a fate? You have to exhaust under FRI. What's really the purpose of that? If then you could, once you can get past exhaustion and come into court, you can just basically start from scratch on the 504 claim without having to worry about what the ruling was on the IDEA, if I'm understanding that that's what you're saying the approach should be. I would not necessarily say, Your Honor, that you start from scratch. I think that in these cases, it is often not clear at the outset of a case whether or not a student does qualify under IDEA or if appropriate relief is held under Section 504. And given the state of exhaustion law, most practitioners do err on the side of going through the IDEA process before doing the Section 504 claim because of that exhaustion hurdle that they must meet. I know your time's up, but one last question for me. Any circuit, it doesn't have to be from us, is there a case you can point to that you think best recognizes the argument you're making and says that a ruling under IDEA that you aren't entitled to a fate isn't dispositive of a 504 claim? I think actually the Lance v. Louisville ISD case of the Fifth Circuit makes the point that while in that case the 504 claim of the student failed because the court held the district had met its obligations under the IDEA, but the court specifically noted that that would not apply to a student who was not eligible under the IDEA because no services will have been provided. Because the eligibilities are different, you have to then consider whether or not the child is eligible under Section 504. All right. Thank you, Ms. Rogers. We'll now hear for the school district. Whenever you're ready, counsel. Thank you, your honor. May it please the court, I'm Sarah Leon. I'm appearing on behalf of Kirbyville CISD. And I'd like to start by just, if you will permit, jumping around a little bit to talk about some of the things that were raised in the in the presentation. Ms. Kirk correctly states that the parties left the IDEA hearings, and there were two of them, empty-handed. There was no evidence at either of those hearings that the student required accommodations or that she had been excluded from an educational setting. And in fact, we start with the uncontested fact that the school district has provided this student with a free appropriate public education for the time period of her seventh grade year through the 10th grade year when the second hearing officer decision was issued. In both due process hearing requests, the parties asked for, the plaintiff asked for, administrative remedies. And in the record, the second due process hearing examiner addresses those square on. He notes that although the student sometimes behaved inappropriately, her behavior did not impact her ability to learn. The 504 accommodations that the school district ultimately gave were no different than accommodations that were already present for the general education population. And so he found that she was a typical student who had conflict with a couple of peers, but otherwise was progressing both academically and emotionally. And so that decision has never been appealed, has not been appealed, and is a final ruling for purposes of this argument. Your Honor asked what remedy that they were seeking, and I think Ms. Kerr inadvertently omitted one of the most significant remedies, and they are seeking an award of attorney's fees. At the summary judgment level, the fees incurred in this case were substantial. And so that is also a remedy being sought here. And as I think you've pointed out, this is a successful student who is about to graduate with her class. She's an AB student with no need for any kind of additional services to get her through her academic career at Kirbyville High School. Seeking compensatory services under 504, the courts have not construed 504 to require compensatory services. 504 is an anti-discrimination statute, and it provides that a student shall not be excluded from the benefits of an educational program solely by reason of his or her disability. So it does not provide the same kinds of remedies that are available under the IDA, which is why, as Ms. Rogers pointed out correctly, frequently, the parties will go to IDEA to seek such services as counseling. Ms. Kerr said that one of the reasons why we're here is that the district court's decision eliminates the student's 504 eligibility, and that could impact her going into college. My response to that is twofold. Number one, there's nothing in the district court's decision that states that the student is not eligible under Section 504. To the contrary, the district court said that she had not articulated a separate and independent cause of action under Section 504, which is a wholly different finding. And as to colleges, each college makes their own 504 eligibility determination. The 504 plan, if any, that the student brings forward from high school would be independently evaluated by any college and would be, quite frankly, irrelevant. Council asked you to look at the Bostock decision for guidance here, and I would urge that the court do the same. I think Bostock gives us a helpful approach to looking at the importance of finding intent in those statutes to protect individuals with protected characteristics from discrimination. In Bostock, the court noted that when we have a statute that prohibits discrimination because of or by reason of a protected characteristic, that has the same but-for causation. So, but-for the disability, the student would not be receiving that outcome. And the court went on to say— On this intent question, our general—let's take it outside the education context. Our general rule under Section 504 or the ADA, which are read together for the most part, is that if you want damages for discrimination, yes, you need that intentional discrimination. Finding of intent. But if it's just a failure to accommodate—so if you're just saying, oh, there needs to be a wheelchair ramp at the school, and you're not asking for damages, you just want injunctive relief to build that ramp, then you don't need a finding of intent. It's just enough that they're not accommodating your disability, whether they have intent to discriminate against you or not. So why shouldn't that be the same line here, that if you want damages for discrimination, yes, then you need to show intent. But if it's just more along the lines of a failure to accommodate, and you're just asking for injunctive relief or other equitable relief, you don't need to show that intent. I think the answer to that question is found in looking at the underlying nature or the gravamen of this case. 504 and IDEA work together as a safety net to protect children with disabilities. IDEA provides that student with access to the curriculum in a way that is appropriate to the child's ability and disabilities, and provides an individualized instruction. 504 just protects that student from being excluded from an educational setting. So if we had a school district, for example, that did not have a wheelchair ramp, we wouldn't be looking at the same kinds of issues that we have here. Here we have a student who's being perfectly well served in the general education setting. We have a hearing officer's decision that says her emotional disability, if any, is not impacting her ability to access the curriculum at all. So if you were to say, well, the court is going to second guess at this point the educational findings of the school district and the hearing officer, you're going to be creating a brand new cause of action that Congress never intended. The plain language of Section 504 requires that the person is denied benefits solely by reason of that person's disabilities. I think that this court in the DA case... So someone just brings a claim. I had a claim a couple years ago. Someone wanted, they're in medical school already, they wanted an accommodation on these and, you know, the question was whether they deserve that accommodation. That's a fact-intensive issue. But would that require... Asking for that accommodation, so put it with your client, just a high school student says, I have this issue that means I need 30 minutes more every time I take a test. Would they need to show intentional discrimination for that or would it just be a question of whether they're qualified? Would they have a condition that qualifies them for 30 minutes of extra time? I think this court in Marvin H. said that that person would have a cause of action if the school district unreasonably refused to provide the accommodation. Just like any ADA case where you have a person with disabilities who's requesting an accommodation in the workplace or whatever, you have that first, you know, good faith analysis. Is that a reasonable accommodation? Right, but you do that, but you don't usually... For accommodations you don't have to show, or the wheelchair example, you don't have to show that, boy, they really intended to harm those people in wheelchairs. You just have to show that it would be, as you say, reasonable to build that wheelchair. And unreasonable to refuse to build it if the person brought it to the school's attention. But if you were... If you had never brought it to the school's attention, I think that is a different question. But if the wheelchair-bound person said, I cannot access my school because I can't get in. And the school said, I'm sorry, we're just not going to do that. Then I think you've got the level of intent that this court has articulated in the Marvin H. decision to get you into federal court and to get... Seek relief. Well, hasn't Marvin H. been overruled, at least implicitly? I don't believe so, Your Honor. I think it's been cited with approval by this court. Well, I think that you're right, but that's still not recognizing what the Supreme Court did in Brown. I'm sorry, Your Honor, I'm having trouble hearing you. I'm sorry. I said that you're right, that this court has continued to be overruled. I don't think it's been cited, Marvin H., that the Supreme Court at least arguably overruled it. Judge Wehner, you do keep going in and out. I don't know if there's a way to speak more closely into your mic or... Go ahead. That's okay. Your Honor, my response to that would be simply that I think both in the Fifth Circuit and in other circuits, to show a cause of action under 504, it is very consistent that either the school district shows gross misjudgment, gross departure from reasonable academic and accepted standards of practice, or an unreasonable refusal to provide an accommodation. It is not a tort cause of action that gives liability in the absence of one of those factors. I would point the court to the BM versus South Callaway case that's out of the Eighth Circuit that's cited in our brief. That's almost identical factually to what we have, the claims that you have before you here. In that case, there was a student who had behavioral issues at school. The parent sought an IEP under the IDEA, went through due process, and was unsuccessful in establishing that the child needed individualized instruction. The parent then sought a 504 accommodation, and it was about 18 months later before the school district implemented a 504 plan for that student. In the court, they are said that neither the 504 nor the ADA create an independent federal tort claim of educational negligence. The educators either had to deviate substantially from generally accepted educational judgment or act with wrongful intent in order to articulate a separate cause of Marvin H. I think in the estate of Lance decision, this court also approved the refusal to provide a reasonable accommodation as the appropriate standard for a 504 disability discrimination claim. Very quickly, the case is a little bit confusing because there were two due process hearings that issued decisions in 2018. One in January of 2018, that's the case which is on appeal here. There was a second decision issued in December of 2018. That decision is in the record at 1641 and following. The second decision was not appealed, and the first decision was appealed, the IDEA decision, but those IDEA claims were later abandoned. As to the issues raised in the second decision, we urge that those were not administratively exhausted as is required in FRI and in 1415L. If the court is looking carefully, you'll realize that all of the 504 allegations occur after the end of the first due process hearing request. Anything that happened after October of 2017, including those initial 504 meetings, are outside of this court's claims. With respect to the claims that fall within the court's jurisdiction from the 7th and 8th grade school years up through October of 2017, there's no showing that the student, number one, that the school district delayed in identifying because we did initiate a full educational evaluation. Second, there's no evidence that the school district was unnoticed that the evaluation showed that she did not require an evaluation. The parent did present a private evaluation, which was created solely for the purpose of that litigation, and both the school district and the hearing officer noted that the only disability that the evaluator really noted was that she was having difficulty at home. So that was not something that was impacting her education, and the first due process hearing examiner found precisely that. So to say that the delay in identification impacted her services, I think, is outside of the record that's before this court. I would also point out that even in IDEA claims, if there's a delay in providing services or a procedural defect, that does not constitute a violation of FAPE, unless it results in the loss of an educational opportunity. So the student was identified as 504 eligible based on the independent evaluation that the parent provided for purposes of litigation. They met in June of 2018. They met again in July of 2018, and all of the members of the committee, including the parent, agreed that DHH did not require services. She did not require counseling. She did not ask for counseling, nor has she sought it since through any 504 process, and they agreed to just watch her. In the fall of her sophomore year, she expressed anxiety taking tests in her geometry class, and so the 504 committee convened, addressed those concerns, and put testing accommodations in place for her to make sure that she did not have any negative impact from the anxiety she was feeling. In the second due process hearing, you will see that the hearing officer looked at that and said, even though the district implemented 504 accommodations for her, the student did not use them and did not need them in order to be successful. So there's no evidence before this court today that there's a basis for providing compensatory education services or any other form of services to the student who's currently on her way to graduate with mostly A's and a few B's. All right. Thank you. We have your argument, and we'll now hear Mr. Kerr's rebuttal. Thank you. First of all, as explained in our brief, the school district has an independent separate duty under Section 504 to conduct a child find or evaluation under 504. That is what was violated here. They can use the special education provisions, but if they use them, they still have to inform the parent, well, does the child qualify under 504? And that did not happen here in a timely manner. With respect to the comments about how the student is doing now and so forth, none of that is in the record and should not be considered by the court, although we're happy to inform the court. I did want to address the question about the ability to provide compensatory services under Section 504. As I indicated, there were a couple of older Texas opinions that are cited in our brief, Howard and David versus Spring Branch. In addition, the minor decision itself, which is deemed as the sort of seminal opinion on compensatory education, which came from the Eighth Circuit, that opinion speaks about compensatory education under 504. With respect to the issue of the services and whether or not the student can bring a claim for remedial compensatory services under 504 that is similar to what an IDEA claim could be, that is precisely what Fry instructs. And that is why the Marvin case no longer holds good weight. Fry reconciled the issue of what do we do when we have a student who is seeking some sort of relief under Title II? And what Fry said was, well, you go through your IDEA hearing. If you come out empty-handed, well, you've tried, and the school has had their opportunity. But it didn't say you can't bring that claim unless you also appeal your IDEA claims. There's nothing that says that. That's just not in the law. In addition, Fry, remember, relied upon Alexander versus Schott. Alexander versus Schott made it very clear, very clear, that discrimination is based often not on intent. It's based on benign neglect. Evaluating the student in October of 2016 and then not following its own policy and not giving the student 504 accommodations until summer of 2018, that's pretty good evidence of benign neglect. Now, what the child experienced during that period of time, what her loss was, what her services were or weren't, those facts were never considered as they should have been by the court. That is a material issue of fact that should have survived a summary judgment. Because remember, under 504, it is a summary judgment standard. It is not the individual judge looking at the facts as it would be under the IDEA. So there was plenty of indicating the child's emotional problems, that the parent was trying to pay for counseling, the child had been suspended in having difficulty with her behavior at school. So there was loss. She wasn't able to play sports for a period of time. So those facts go into a question of a genuine issue of material fact that was not adjudicated properly by the district court because of the confusion around 504 and ADA and the IDEA. The Frye case makes it very clear, and if the court follows the Frye case and relies upon Alexander versus Schott, it can only come to the conclusion that a child in this situation does not have to prove that the good and nice teachers at her high school intended her to not get 504 services. Thank you. All right. The case will be submitted. You're excused.